CHEHARDY, Judge.
Ernest N. Morial, Mayor of the City of New Orleans, was sued on February 20, 1979 by five taxpaying citizens of New Orleans who sought to enjoin the Mayor from entering into compulsory binding arbitration with the Police Association of Louisiana, Local 253. Plaintiffs also ask for a declaratory judgment regarding the May- or’s right to agree to compulsory binding arbitration with the Police Association.
The Chamber/New Orleans and River Region and Norman R. Kerth, individually and as president of the Chamber, sought and were granted leave of court to intervene in the suit and join with plaintiffs in the relief demanded against Mayor Morial. The Police Association of Louisiana, Local 253, intervened to oppose the relief sought by the plaintiffs and the Chamber.
The Police Association, in negotiating a collective bargaining agreement with the City to be recognized as bargaining agent for certain of the New Orleans Police engaged in a work stoppage, demanded from the Mayor an agreement to submit all unresolved issues of an economic nature to compulsory arbitration.
The trial court denied the request for a declaratory judgment which would declare that the Mayor of the City of New Orleans is without authority to enter into binding-arbitration with a police union. Injunctive relief to prevent the Mayor from entering into a binding arbitration agreement with the union was also denied.
On September 24, 1979, pending appeal, the court issued an order that the interve-nors-appellants, The Chamber/New Orleans and River Region and Norman R. Kerth, show cause by brief why this appeal should not be dismissed for lack of jurisdiction. However, on October 22, 1979, this court recalled, rescinded and set aside the show cause order and stated:
“ * * * Although the work stoppage has terminated, because of the existence of an ongoing dispute relating to the question of recognition of a bargaining agent and the non-existence of a bargaining agreement, there exists a justiciable controversy.
“Under these circumstances, we conclude that the issue involved in the petition for Declaratory Judgment, seeking to declare that the Mayor of the City of New Orleans is without authority to enter into binding arbitration with a police union, is not moot. See LSA-C.C.P. articles 1875, 1876 and 1881. * * *”
LSA-C.C.P. art. 1876 provides:
“The court may refuse to render a declaratory judgment or decree where such judgment or decree, if rendered, would not terminate the uncertainty or controversy giving rise to the proceeding.”
The trial court refused to render a declaratory judgment under the authority of LSA-C.C.P. art. 1876 for the reasons that:
“ * * * 1, [A]ny such judgment or decree, if rendered, would not terminate the uncertainty or controversy giving rise to the within proceedings; 2, no form of agreement has been shown to the court of the kind and character of which plaintiffs complain, and without being able to review any such agreement, it would be impossible for the court to determine whether or not it would be violative of any provisions of the Constitution or laws of the State of Louisiana; 3, plaintiffs have failed to cite any constitutional or statutory provisions which they allege such an agreement would reprobate.”
The following exchange between the trial judge and counsel capsules the court’s reason for denying the requested injunction:
*446 “THE COURT:
I understand that a public official — and certainly it’s true of the Mayor of the City of New Orleans, when one does his duty and carries out his oath of office— and I have no reason to believe that the Mayor of this City will do anything other than that — as late as a recent case, the Courts have held that the presumption is that a public official will do his duty in accordance with the law. I think that until such time as the Mayor does something that is not within the law, I cannot enjoin him from doing something that may never come about.
MR. McCALL:
Your Honor, as I appreciate the witness’ testimony, it is that he does not believe that he may properly submit these matters to binding arbitration. He has said, however, that he may be pushed to a point where, in order to prevent the collapse of this City’s function, that he may sign this, notwithstanding the fact that he believes that it is improper. Now, he has not said that he is going to set the law at naught. But we are asking this court to add to his normal disposition, to do what he thinks is right, its order enjoining him from doing precisely that—
THE COURT:
This Court will never enjoin somebody from doing something that is wrong for them to do until they do it.
MR. McCALL:
Forgive me, Your Honor, but have I missed something? I thought that an injunction was to prevent the occurrence of something.
THE COURT:
But not in the case of a public official doing his duty. You show me any authority of that and I will do it.
MR. McCALL:
The Mayor is no different than any other citizen—
THE COURT:
I will not condemn the Mayor, to issue an injunction to tell , him to do his duty. The Mayor knows what his duty is and I am .satisfied he is going to do his duty. When the time comes that it is necessary for him to do otherwise, then we will reach that situation at that time.”
In the present case the challenged governmental action has not only ceased but never came into existence, i. e., Mayor Morial never did actually enter into binding arbitration with the Police Association, although he had agreed at one point in the strike to submit all unresolved issues of an economic nature to compulsory arbitration.
Furthermore, the challenged governmental action rests on the contingencies of another strike and the discretionary act of the Mayor, who testified:
“Under the Home Rule Charter, I don’t think it’s within my scope to sign any agreement providing for compulsory binding arbitration. However, if the situation becomes so critical that the only way to get the employees, perhaps, to return to work, I may not have any choice other than doing that.
& # 5j< $ * $
“ * * * I would say that to the union officials, that I am signing it because I have no other choice, because the strike is having a deberating [sic] effect on the life of this community. As Mayor of the City of New Orleans, I may reach a point, because of pressures placed upon us, and threats of other strikes, all of these concerted actions, and based on the statements made of one Mr. Bach’s clients, they may tend to bring the City to its knees. I may have to yield in some areas to save the City.”
It is, therefore, only under the above-described circumstances and if there were another strike that the Mayor would even consider signing a document he believes to be an illegal one.
Although the Mayor has stated that the Police Association of Louisiana, Local 253 is still attempting to be recognized as the bargaining representative for the New Orleans Police, the union has not succeeded at this point, adding just another contingency to the present case.-
*447 The trial judge concluded that a declaratory judgment would not terminate the uncertainty or controversy giving rise to these proceedings. The court acted within the authority of LSA-C.C.P. art. 1876 in refusing to render a declaratory judgment.
The trial judge refused to order the injunctive relief requested ancillary to the declaratory proceeding. In view of the refusal of declaratory relief, the injunction must also be denied. Additionally under these facts, we do not find an abuse by the trial court of the broad discretion it enjoys in determining whether to grant or refuse a preliminary injunction. See Melancon v. Assumption Parish Police Jury, 231 So.2d 690 (La.App. 1st Cir. 1970).
For the reasons assigned the judgment appealed from is affirmed.

AFFIRMED.